## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VIVIAN NIEDZINSKI, on behalf of herself and all others similarly situated,<br><br>                     Plaintiff,<br><br>          v.<br><br>MR. COOPER f/k/a Nationstar Mortgage LLC,<br><br>                     Defendant. | **CIVIL ACTION**<br><br>**NO. 4:19-cv-40037-TSH** |

## REPORT AND RECOMMENDATION

### August 14, 2019

Hennessy, M.J.

   Vivian Niedzinski ("Plaintiff") filed a class action lawsuit in Worcester Superior Court alleging Mr. Cooper f/k/a Nationstar Mortgage LLC[1] ("Defendant") violated Massachusetts General Laws ch. 93A, § 2 and Massachusetts Debt Collection Regulation 940 C.M.R. § 7.04(1)(f).  On February 26, 2019, Defendant timely removed the instant action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Dkt. no. 1.  The stated ground for removal was diversity jurisdiction.  Id. at 1.  Now pending before the Court are Plaintiff's motion to remand for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447 (dkt no. 10) and Defendant's motion to dismiss the complaint and to strike its class action allegations (dkt. no. 4).  The motions are fully briefed and ripe for adjudication.  This Report and Recommendation issues pursuant to a referral of the above motions from District Judge Timothy S. Hillman.  Dkt. no. 18.  For the reasons that follow, the undersigned recommends that Plaintiff's motion be granted insofar as it seeks to remand the action to Worcester Superior Court; that Plaintiff's request for attorneys' fees and

---

[1] Defendant's correct legal name is Nationstar Mortgage LLC, d/b/a Mr. Cooper.

costs in connection with its motion to remand be denied; and that Defendant's motion to dismiss the complaint and to strike the putative class claims be denied as moot and without prejudice.

I.      BACKGROUND

Title 940 of the Code of Massachusetts Regulations, § 7.04(1)(f) prohibits, inter alia, creditors from "[i]nitiating communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period to either the debtor's residence, cellular telephone, or other telephone number provided by the debtor as his or her personal telephone number." Such conduct "constitute[s] an unfair or deceptive act or practice." Id. § 7.04(1). The regulation implements Massachusetts General Laws ch. 93A, § 2, which renders unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

On January 25, 2019, Plaintiff filed a class action complaint in Worcester Superior Court alleging Defendant violated the above laws by calling her more than two times in a seven-day period. Dkt. no. 13-2 ("Complaint") ¶ 14 (alleging Defendant telephoned "at an excessive and harassing rate, placing more than two calls to Plaintiff within a seven-day period"). Plaintiff alleges that she and Defendant meet the Massachusetts Debt Collection Regulations' definitions of "debtor" and "creditor," respectively. Id. ¶¶ 5–6 (citing 940 MASS. CODE REGS. § 7.03). She brings the instant suit individually and on behalf of others similarly situated, seeking to represent the following class:

> All consumers residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action [that is, January 25, 2019], received in excess of two telephone calls regarding a debt from [Defendant] within a seven-day period to their residence, cellular telephone, or other provided telephone number.

Complaint ¶ 20.  She alleges that Defendant's regular business practice is to place numerous debt collection calls per week to known debtors, and that thousands of Massachusetts consumers have been affected by this practice.  Id. ¶¶ 21–23.

The complaint further alleges that Defendant's harassing communications caused Plaintiff injury, including anger, anxiety, emotional distress, fear, frustration, and embarrassment.  Id. ¶¶ 15–16.  Additionally, the calls allegedly were distracting, inconvenient, constituted an invasion of Plaintiff's privacy, and wasted her time and energy.  Id. ¶¶ 17–18.

II.   LEGAL STANDARD

"A case is properly removed to federal court pursuant to 28 U.S.C. § 1441(a) only if the action could originally have been brought in federal court."  Toro v. CSX Intermodal Terminals, Inc., 199 F. Supp. 3d 320, 322 (D. Mass. 2016) (Hillman, J.) (citing Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33 (2002)).  Where the predicate for removal is 28 U.S.C. § 1332, "the parties must be diverse in citizenship and the amount in controversy must exceed $75,000."[2]  Id. at 322.  The amount-in-controversy calculation may include statutory multipliers of damages and statutory attorneys' fees.  Id. at 322–23 (citing Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 82 (1st Cir. 2014); Velez v. Crown Life Ins. Co., 599 F.2d 471, 474 (1st Cir. 1974)).  The removing party bears the burden of demonstrating that the court has subject-matter jurisdiction over the action.  Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009).

A removing party's burden to satisfy the amount-in-controversy requirement is higher than that imposed on a plaintiff seeking to litigate in federal court.  Lopez v. U.S. Bank Nat'l Ass'n, No. 14-cv-11944-MGM, 2014 WL 4928883, at *1 (D. Mass. Sept. 30, 2014) (citing Amoche, 556 F.3d at 49) (noting "the First Circuit has determined that it is appropriate to impose

---

[2] Plaintiff does not dispute that the parties are diverse:  Plaintiff is domiciled in Massachusetts and Defendant is a Delaware corporation with a principal place of business in Texas.  Complaint ¶¶ 5–6.

on a defendant seeking removal a higher burden of proof to establish the amount in controversy than is imposed on a plaintiff seeking to litigate in federal court"). In Amoche v. Guarantee Trust Life Insurance Co.—where the stated basis for removal was not diversity jurisdiction, but rather the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.)—the First Circuit stated that the burden is best described as a "reasonable probability" that the amount-in-controversy threshold is satisfied. 556 F.3d at 50.

However, "[t]he First Circuit has not yet decided how heavy a burden the removing party must bear when proving the amount-in-controversy requirement" when the stated ground for removal is diversity jurisdiction. Huston v. FLS Language Ctrs., 18 F. Supp. 3d 17, 20 (D. Mass. 2014) (citing Milford-Bennington R.R. v. Pan Am Rys., Inc., 695 F.3d 175, 178–79 (1st Cir. 2012)). This Court has interpreted Amoche as suggesting that the First Circuit would have no reason to use an alternative standard when removal is predicated on diversity jurisdiction.[3] Lopez, 2014 WL 4928883, at *3 n.1; see also Huston, 18 F. Supp. 3d at 21 ("There is no obvious reason why the burden of showing that the jurisdictional amount has been met should be different for removal under diversity of citizenship than under CAFA" (citing Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 236 (D. Mass. 2010))).

This Court utilizes the following framework to determine whether the removing party has satisfied the above standard:

> First, if the jurisdictional amount is not facially apparent from the complaint, then a court need look to the notice of removal and any other materials submitted by the removing defendant. However, whether a defendant has shown a reasonable probability that the amount in controversy exceeds [the jurisdictional minimum] may well require analysis of what both parties have shown. Second, as part of the analysis of whether a removing defendant has met the standard of reasonable probability, a court may consider which party has better access to the relevant

---

[3] While the instant case is a putative class action, Defendant does not argue that CAFA provides grounds for removal. Removal pursuant to CAFA requires, inter alia, an aggregate amount in controversy exceeding $5 million. 28 U.S.C. §§ 1332(d), 1453; Amoche, 556 F.3d at 43. Here, such is neither alleged nor argued.

information.  Third, a court's analysis of the amount in controversy focuses on whether a removing defendant has shown a reasonable probability that more than [the jurisdictional minimum] is in controversy <u>at the time of removal</u>.  Fourth, any doubts in the evidence should be construed in favor of remand because the court has a responsibility to police the border of federal jurisdiction.  Fifth, this preliminary determination concerning whether a defendant has met its burden should be done quickly, without an extensive fact-finding inquiry.  Finally, a plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.

<u>Reynolds v. World Courier Ground, Inc.</u>, 272 F.R.D. 284, 286 (D. Mass. 2011) (quotation marks and citations omitted) (alternations and emphasis in original).

Finally, because the removal statute is strictly construed, "any doubts about the propriety of removal are resolved in favor of remand to the state forum."  <u>Doe v. Access Indus., Inc.</u>, 137 F. Supp. 3d 14, 16 (D. Mass. 2015) (quoting <u>In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.</u>, 76 F. Supp. 3d 321, 327 (D. Mass. 2015)); <u>see also</u> <u>Kingsley v. Lania</u>, 221 F. Supp. 2d 93, 95 (D. Mass. 2002) ("Removal statutes should be strictly construed against removal and doubts resolved in favor of remand." (quoting <u>Therrien v. Hamilton</u>, 881 F. Supp. 76, 78 (D. Mass. 1995))).

III.    ANALYSIS

A.    <u>Plaintiff's Motion to Remand</u>

I first consider Plaintiff's motion to remand.  <u>See</u> <u>Doe v. McGuire</u>, 289 F. Supp. 3d 266, 269 (D. Mass. 2018) (considering issue of remand before assessing a motion to dismiss, "as such motions [to remand] may implicate the Court's subject matter jurisdiction").

1.    Civil Cover Sheet Damages Amount

"The Court first looks to [P]laintiff's specific damage allegations to determine the amount in controversy."  <u>Huston</u>, 18 F. Supp. 3d at 21 (citing <u>Coventry Sewage Assocs. v. Dworkin Realty Co.</u>, 71 F.3d 1, 6 (1st Cir. 1995)).  Plaintiff's complaint does not allege a

monetary damages amount, but her amended civil cover sheet claims damages of $750,000.  Dkt. no. 1-1, at p. 2.  In support of removal, Defendant contends that Plaintiff individually seeks more than the jurisdictional threshold amount, "particularly when in her [civil cover sheet] she purports damages of $750,000."  Dkt. no. 1 ¶ 3(d).  This argument is unconvincing.

As this Court observed in Toro v. CSX Intermodal Terminals, Inc., "civil cover sheets are inherently imprecise, and the extent of a civil cover sheet's role in determining the amount in controversy is not settled in this Circuit."  199 F. Supp. 3d at 324 (citations omitted).  Consistent with this acknowledgment, in Huston v. FLS Language Centres, where a plaintiff's civil cover sheet estimated damages of $250,000, Judge Saylor considered claims for state law overtime and minimum wage violations, which implicated treble damages and statutory attorneys' fees.  18 F. Supp. 3d at 17, 22, 25.  In finding that the plaintiff's statement of damages would exceed the number of working hours in a year, Judge Saylor opined that it was "reasonable to conclude that the claimed damages . . . on the cover sheet represented the amount in controversy plaintiff expected the entire class to recover" and that "[t]hat amount is not sufficient to establish federal jurisdiction."  Id. at 22. Judge Hillman recently reached the same conclusion in a matter involving violations of law identical to those alleged here.  See Order & Memorandum on Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction at 6, Powers v. Receivables Performance Mgmt. LLC, No. 18-40170-TSH (Dkt. no. 10) (D. Mass. Apr. 18, 2019) (citing Toro, 199 F. Supp. 3d at 324) (concluding "that Plaintiff's claim of $750,000 in damages [as stated on the state-court civil cover sheet] is most reasonably read as an estimate of class-wide damages").

A similar approach supports an identical conclusion here—that the $750,000 demand on Plaintiff's cover sheet is most reasonably understood an as estimate of the entire putative class's

damages, not just those of Plaintiff. The statute at issue authorizes recovery "in the amount of actual damages or twenty-five dollars, whichever is greater." MASS. GEN. LAWS ch. 91A, § 9(3). Assuming Plaintiff was granted the statutory minimum damages award, then Defendant would have to have called Plaintiff 30,000 times to reach the stated damages estimation ($25 x 30,000 = $750,000). Given the allegation in the complaint that Defendant repeatedly called Plaintiff's cellular telephone to collect a debt "[w]ithin the last four years," see Complaint ¶ 10, this damage amount would contemplate more than twenty calls every day for four years. Such an inference cannot easily be squared with the allegations in the complaint that Defendant placed "more than two collection calls to Plaintiff . . . within a seven-day period." Complaint ¶ 4. Similarly, this same allegation is best understood as not supporting $750,000 in emotional damages. In other words, these scenarios are unreasonable and unsupported.[4] Finally, Plaintiff's civil cover sheet also contains a notation, to the immediate left of the monetary damages estimation, that the instant suit is "a class action under [Federal] Rule [of Civil Procedure] 23." Dkt. no. 1-1, at p. 2. This notation further supports the conclusion that the cover sheet's demand estimates class-wide damages. Accordingly, the undersigned is not persuaded that the damages amount reported in the civil cover sheet estimates Plaintiff's individual claims.

2. Aggregation of Class Claims to Meet $25,000 Superior Court Threshold

Defendant argues that removal was proper because Plaintiff brought her claims in Superior Court, and that class plaintiffs may not aggregate claims before the Superior Court to satisfy the $25,000 jurisdictional threshold. Thus, in Defendant's view, Plaintiff's filing in

---

[4] To boot, Plaintiff's counsel represented at argument that his client's individual damages do not exceed the federal jurisdictional threshold. It thus follows that Plaintiff's individual damages would not even come close to $750,000.

Superior Court implicitly admits single and individual damages of over $25,000,[5] and when
treble damages and statutory attorneys' fees are considered, the $75,000 federal jurisdictional
threshold is exceeded.

There are a number of flaws in Defendant's argument.  First, it presents no black letter
law prohibiting the aggregation of class claims to satisfy the Superior Court jurisdictional
threshold.  To the contrary, Massachusetts case law suggests that class claims may be aggregated
to satisfy the Superior Court's amount-in-controversy threshold:

> [T]his court feels that there should not be a blanket prohibition against the
> aggregation of class action claims in order to meet the twenty-five thousand dollar
> [Superior Court] jurisdictional threshold.  Giving plaintiffs access to court when
> their "likely range of recovery would preclude any individual plaintiff from
> having his or her day in court" is one of the main purposes of the class action rule.
> See Weld v. Glaxo Wellcome, Inc., [746 N.E.2d 522, 532,] 434 Mass. 81, 93
> (2001).  It seems irrational to allow an individual plaintiff claiming more than
> twenty-five thousand dollars in damages access to the Superior Court and at the
> same time disallow access to class plaintiffs alleging the same amount
> collectively.  Therefore, in order to carry out the policies underlying the concept
> behind "class action" litigation, this court feels that the Superior Court is the
> proper venue for class action cases where the plaintiffs' aggregated claims exceed
> the twenty-five thousand dollar threshold.

Fillmore v. Leasecomm Corp., Nos. 20040487H, 86778, 2004 WL 3091642, at *7 (Mass. Super.
Ct. Nov. 15, 2004).  The above policy has been acknowledged, at least impliedly, by this Court.
See, e.g., Sparke Hill, Inc. v. Interstate Mat Corp., No. 11-10271-RWZ, 2014 WL 2215756, at *3
(D. Mass. May 23, 2014) (concluding that denial of a motion to certify a class in Superior Court
may render dismissal of plaintiff's complaint appropriate "because without class certification,

---

[5] Under Massachusetts law, "actions may proceed in the [Superior C]ourt only if there is no reasonable likelihood
that recovery by the plaintiff will be less than or equal to $25,000."  MASS. GEN. LAWS ch. 212, § 3.  "Where
multiple damages are allowed by law, the amount of single damages claimed shall control."  Id.  Hence, while
Plaintiff's claims allow for recovery of statutory treble damages and attorneys' fees, those amounts are not
considered for purposes of exceeding the Superior Court's $25,000 amount-in-controversy threshold.  See id.

there [is] no reasonable probability that plaintiff could recover $25,000 or more") (emphasis added).[6]

Second, Defendant attempts to dismiss <u>Fillmore</u> on the basis of the procedural history of <u>Toro.</u>  Defendant contends that if class claims may be aggregated to meet the Superior Court jurisdictional monetary threshold, the exercise of determining the value of the named plaintiff's claims in <u>Toro</u> would have been unnecessary.  <u>See</u> 199 F. Supp. 3d 320, 322 (discussing decision in <u>Toro v. CSX Intermodal Terminals, Inc.</u>, No. SJ-2013-0352, at *4 (Mass. May 16, 2014)). There, a single justice of the Supreme Judicial Court had assessed the value of a putative class's named plaintiff's claims in order to determine which state court (District or Superior) had jurisdiction over the action, concluded that the value of the named plaintiff's claims likely exceeded $25,000, and dismissed the complaint from the District Court without prejudice to refiling in Superior Court.  <u>Id.</u>  However, the decision of the single justice is entirely silent on the propriety of aggregation of putative class claims to meet the Superior Court's jurisdictional threshold.  Indeed, it is unclear whether the issue was briefed by the parties.  The opinion also does not contain any discussion of <u>Fillmore</u>.  To the contrary, there was a controlling SJC decision on calculating "lost wages" that arguably obviated the need to brief, analyze, and decide the question of aggregation of class claims.  <u>See Toro</u>, No. SJ-2013-0352, at *3–5.  Accordingly, while the single justice chose to resolve the amount-in-controversy issue by focusing on the

---

[6] While it appears that putative class claims may be aggregated to exceed the $25,000 Superior Court's jurisdictional threshold, the same cannot be done in federal court to satisfy diversity jurisdiction under 28 U.S.C. § 1332.  <u>See Snyder v. Harris</u>, 394 U.S. 332, 335 (1969); <u>see also Cruthird v. Keefe Commissary Network, LLC</u>, No. 15-10070-DJC, 2015 WL 4779244, at *2 (D. Mass. Aug. 11, 2015) ("The claims of the class members cannot be aggregated for [federal] jurisdictional purposes unless [CAFA applies].").

putative class plaintiff's claims, Defendant attributes too much significance to the single justice's method.[7]

Logic also undermines Defendant's argument that the federal jurisdictional threshold is satisfied simply because Plaintiff filed suit in Superior Court.  If the Court were to adopt this reasoning wholesale, then every Superior Court case that implicates statutory treble damages and attorneys' fees would satisfy the federal amount-in-controversy requirement.  This cannot be so; the argument presupposes that every Superior Court case was properly filed in that forum. Indeed, a case filed in Superior Court is subject to dismissal, or transfer to a state district court, if that court determines that the amount in controversy is less than or equal to $25,000.  See Diamond v. City of Newton, No. Civ. A 98-3471, 1999 WL 162576, at *2 (Mass. Super. Ct. Mar. 16, 1999) ("Because the amount in controversy does not exceed the statutorily required $25,000 necessary to provide subject matter jurisdiction in Superior Court, this case must be remanded to the district court."); see also MASS. GEN. LAWS ch. 212, § 3.  The procedural history of Toro illustrates this authority quite clearly; it demonstrates that the amount in controversy in any matter is subject to judicial review for an assessment of subject matter jurisdiction.  Toro, 199 F. Supp. 3d. at 322 (discussing procedural history).

Finally, the undersigned does not dismiss the tension between Toro's procedural history and Fillmore.  However, the tension between the two creates uncertainty and fails to carry Defendant's burden.  Such uncertainty favors remand to Superior Court.  See Access Indus., 137 F. Supp. 3d at 16 (quoting Fresenius Granuflo, 76 F. Supp. 3d at 327) (noting "any doubts about the propriety of removal are resolved in favor of remand to the state forum"); see also Kingsley, 221 F. Supp. 2d at 95 ("Removal statutes should be strictly construed against removal and doubts

---

[7] Of course, unlike in Toro, no judicial determination respecting the value of Plaintiff's individual claims has been made in the instant case.

resolved in favor of remand." (quoting <u>Therrien</u>, 881 F. Supp. at 76)).[8]

For the above reasons, Defendant has not demonstrated to a reasonable probability that the federal amount-in-controversy threshold is satisfied.  <u>See</u> <u>Lopez</u>, 2014 WL 4928883, at *1. The undersigned therefore recommends that the instant matter be remanded to Superior Court for further proceedings.

> B.     <u>Defendant's Motion to Dismiss</u>

A motion to dismiss generally becomes moot once a court concludes that remand is appropriate.  <u>See</u> <u>Gomes v. Midland Funding, LLC</u>, 839 F. Supp. 2d 417, 420 (D. Mass. 2012) (denying defendant's motion to dismiss as moot upon granting plaintiff's motion to remand). Yet Defendant argues that the First Circuit recognizes a "futility exception" to remand, thus allowing this Court to dismiss an action—even if remand were otherwise appropriate—if the Court "can 'say with absolute certainty that remand would prove futile.'"  <u>Hudson Sav. Bank v. Austin</u>, 479 F.3d 102, 109 n.5 (1st Cir. 2007) (quoting <u>Me. Ass'n of Interdep. Neighborhoods v. Comm'r, Me. Dep't of Human Servs.</u>, 876 F.2d 1051, 1054 (1st Cir. 1989)).  Defendant contends that the futility of remand is absolute because Plaintiff has failed to sufficiently plead an injury in fact, a requisite for standing in both federal and state court.  <u>See</u> <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547–48 (2016); <u>see also</u> <u>Animal League Def. Fund, Inc. v. Fisheries & Wildlife Bd.</u>, 624 N.E.2d 556, 559 (Mass. 1993) (stating that "[t]o have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury") (alteration in original)

---

[8] One other argument made by Defendant warrants brief mention.  It claims that, because this Court may factor attorneys' fees and costs into the amount-in-controversy calculation, even a conservative estimate of Plaintiff's fees and costs would push the amount in controversy past the jurisdictional threshold.  But for one, "attorney's fees in a class action may not be aggregated and attributed only to the named plaintiff but rather must be prorated across the entire class."  <u>Radlo v. Rhone-Poulenc, S.A.</u>, 241 F. Supp. 2d 61, 64 (D. Mass. 2002).  Second, even if Defendant provided a reasonable assessment of attorneys' fees and costs for this litigation, it nevertheless has failed to demonstrate the value of Plaintiff's individual claims.  Thus, the argument fails.

(quoting <u>Slama v. Atty. Gen.</u>, 428 N.E.2d 134, 137 (Mass. 1981)).  Specifically, Defendant

contends that Plaintiff has pleaded only a <u>per se</u> injury—that Defendant's regulatory

noncompliance is the only harm.  It argues such a theory is insufficient to state a Chapter 93A

claim.

      The undersigned makes no determination as to whether a futility exception to remand

exists or if such an exception is recognized in this Court.  For one, 28 U.S.C. § 1447 states in

relevant part: "If at any time before final judgment it appears that the district court lacks subject

matter jurisdiction, the case <u>shall</u> be remanded" to the state court.  28 U.S.C. § 1447(c)

(emphasis added).  The statute does not provide for judicial discretion.  Second, in the case

Defendant credits for the recognition of this exception, <u>Maine Association Interdependent</u>

<u>Neighborhoods v. Commissioner, Maine Department of Human Services</u>, 876 F.2d 1051 (1st

Cir. 1989) ("<u>M.A.I.N.</u>"), the First Circuit held that such exception, even if it exists, did not apply

on the facts of that case.  <u>Id.</u> at 1054.  Third, in 1994, the First Circuit applied the exception in an

unpublished decision, without extensive comment, and without any citation to <u>M.A.I.N.</u>  <u>See</u>

<u>Haggert v. Hamlin</u>, No. 94-1027, 1994 WL 251067, at *1 (1st Cir. 1994).  In fact, the only case

to which <u>Haggert</u> cites for the proposition that a futility exception to remand exists is <u>Bell v. City</u>

<u>of Kellogg</u>, 922 F.2d 1418 (9th Cir. 1991).  <u>Bell</u> has since been called into question by later

decisions of the Ninth Circuit.  <u>See</u> <u>Russell's Garden Ctr., Inc. v. Nextel Commc'ns of Mid-Atl.,</u>

<u>Inc.</u>, 296 F. Supp. 2d 13, 19–20 (D. Mass. 2003) (discussing <u>Bell</u> and later opinions).   Finally,

years after the decisions in both <u>M.A.I.N.</u> and <u>Haggert</u> were issued, a judge of this Court

determined "that no futility exception exists."  <u>Russell's Garden Ctr.</u>, 296 F. Supp. 2d at 20.

      Assuming <u>arguendo</u> that a futility exception to remand does exist and is recognized in

this circuit, the undersigned nevertheless concludes that dismissal is inappropriate.  First, it is the

Court's view that Plaintiff has pleaded more than a <u>per se</u> injury; so remand would not amount to a mere exercise in futility.  Chapter 93A is a broad consumer protection statute that provides a private cause of action for a consumer who "has been injured" . . . by "unfair or deceptive acts or practices."  MASS. GEN. LAWS ch. 93A, §§ 2(a), 9(1).  "If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic—the consumer is entitled to redress under our consumer protection statute."  <u>Hershenow v. Enter. Rent-A-Car Co.</u>, 840 N.E.2d 526, 535 (Mass. 2006).  Here, the complaint alleges Defendant "called Plaintiff at an excessive and harassing rate, placing more than two calls to Plaintiff within a seven-day period," and provides the telephone numbers from which calls were placed and those at which calls were received.  Complaint ¶¶ 12–14.  Plaintiff alleges injury including anger, anxiety, emotional distress, fear, frustration, embarrassment.  She further alleges that the calls were distracting and inconvenient, constituted an invasion of her privacy, and wasted her time and energy.  <u>Id.</u> ¶¶ 15–18.  In the Court's view, these allegations constitute "some kind of separate, identifiable harm arising from the violation itself."  <u>Aspinall v. Philip Morris USA Inc.</u>, No. 98-6002-BLS1, 2015 WL 9999126, at *3 (Mass. Aug. 11, 2015) (quoting <u>Tyler v. Michaels Stores, Inc.</u>, 984 N.E.2d 737, 745 (Mass. 2013) (concluding that the sale of consumers' personally identifiable information may be an invasion of privacy, a noneconomic injury that is cognizable under Chapter 93A, even if the sale caused only nominal damages)).

Furthermore, while the complaint is short on substantive factual development, there is some heft to its allegations.  It alleges the existence of a debt, Defendant's use of the telephone at a frequency that, if proved, violates Massachusetts law, and injury. As such, it does enough to make out potential violations of the Massachusetts Debt Collection Regulations and Chapter

93A.  For these reasons, the undersigned is not persuaded, to an absolute legal certainty, that Plaintiff lacks standing to maintain her claims.

Defendant further argues that it would be a waste of judicial resources insofar as remand to Superior Court may cause Plaintiff to amend her complaint to state her injury and damages more precisely, which then would permit Defendant to remove the case a second time.  Yet any amendment to the complaint to clarify Plaintiff's injury and damages would not axiomatically justify a second removal.  The amount in controversy of Plaintiff's individual claims still must exceed the $75,000 federal jurisdictional threshold.  If it did not, removal would be improper.  Finally, Defendant's own conduct has brought about the issue it now protests.  Defendant removed the action to this Court, and in the Court's view, improperly.  Should removal become proper at a later point, and whether Defendant may remove the action at that time, are questions for a later day.

C.      Attorneys' Fees and Costs

Finally, Plaintiff seeks an award of attorneys' fees and costs for her motion to remand. Dkt. no. 11, at p. 8.  As grounds for such award, she claims that Defendant removed this action and thereby implicitly conceded that this Court may exercise subject matter jurisdiction over the claims, while simultaneously arguing in a motion to dismiss that this Court lacks subject matter jurisdiction.  Id.; see also dkt. no. 4, at p. 1.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp.,

14

546 U.S. 132, 141 (2005).  "The First Circuit has not defined what constitutes 'objectively reasonable' grounds for removal, although many district courts have declined to award fees unless the facts are 'so one-sided as to have made remand a foregone conclusion.'"  <u>Huston</u>, 18 F. Supp. 3d at 25 (quoting <u>Youtsey</u>, 734 F. Supp. 2d at 239).

In the Court's view, the record is not so one-sided that it can be said Defendant lacked an objectively reasonable basis for removal.  First, Plaintiff's amended civil cover sheet does not express whether the stated damages estimates Plaintiff's individual damages or the damages of a putative class.   While common sense suggests that the amount reflects the latter, the cover sheet is not without ambiguity.  Also, of little benefit to Defendant is Plaintiff's complaint, which does not contain a monetary damages estimation.

Second, Defendant's motion to dismiss is predicated mainly on Plaintiff's alleged failure to state a claim for which relief may be granted; that Plaintiff conclusorily pleaded injury. Because of this, Defendant secondarily argues that the complaint may be dismissed for lack of standing.  <u>See</u> dkt. no. 5, at p. 8 ("For the same reasons Plaintiff has failed under Rule 12(b)(6) to plead actual facts demonstrating a distinct injury to support her Chapter 93A claim, she has likewise failed under Rule 12(b)(1) to adequately plead injury-in-fact showing that she has standing.").  These arguments are objectively reasonable.  Accordingly, I find that Defendant did not lack an objectively reasonable basis for removal and recommend Plaintiff's motion for costs and attorneys' fees be denied.

**Conclusion**

For the above reasons, the undersigned recommends that Plaintiff's motion (dkt. no. 10) be GRANTED inasmuch as it seeks remand to Worcester Superior Court; that Plaintiff's request for attorneys' fees and costs in connection with its motion to remand be DENIED; and that Defendant's motion to dismiss the complaint and to strike the putative class claims (dkt. no. 4) be DENIED as moot and without prejudice.[9]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[9] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).